William Wilsley Appeals a Decision of the U.S. Court of Appeals for Veterans Claims The issue presented is whether or not the Veterans Court erred by failing to follow the rule of law as stated in their en banc decision in Russell v. Prince Sippey. This appeal must first address whether or not the standards specified in Russell constitute a rule of law. Obviously Mr. Wilsey believes that they do. If they do, then this Court does have case jurisdiction under the amendment to this Court's jurisdiction by Congress that provides for rule of law review of decisions of the Veterans Court. Now Mr. Carpenter, I like the concept, but I am having trouble distinguishing following a rule of law from following the rules as to how that law is applied to fact. Well, if your question is what Congress intended by the amendment, I'm not sure that that's clear either from the legislative history or from the specific language of the amendment. My understanding, particularly based upon Judge Blager's analysis of the amendment in the Morgan case, is that the intention of Congress was to permit an application of law to fact or a review of the application of the law in a rule of law context. And therefore it is separate from the limitation that otherwise exists to this Court's jurisdictional extension or reach to be prohibited from reviewing normally decisions made by the Court below based upon its application of law to a particular set of facts. I think it's also important in a rule of law distinction to examine whether or not we are dealing with, as we have historically with the rule of law involving equitable tolling, whether or not the facts in the record are indisputed. And I think, at least in this particular case, the facts in this case are not disputed. The facts are that there was a rating decision that was based upon a VA examination and not based upon VA medical records, which the VA examiner put the adjudicator on notice existed. That fact is disputed, isn't it? No. I read the 83 report. They refer to the hospital report. The board seems to say that the RO considered all the evidence. And the Court of Appeals seems to have affirmed the board on that question. But the difference here is that the collateral attack is not on the board's decision, but on whether or not the board and the court below correctly applied the rule of law as regards to the challenge decision, the 1983 decision. And I think you're correct that the board and the court below assumed that the adjudicator had knowledge of these records. But the rating decision, which is in the appendix of I believe it's 87 to 89—I'm sorry, 84 to 86, excuse me—does not at all indicate that. And, in fact, at page— In the middle of page 84, the line is hospital report reveals. Page 84? 85. I'm sorry, 85. Middle of the paragraph there, the examiner stated that the veteran was self-employed. The next sentence, hospital report reveals. I'm sorry, I'm just— See, they're right in the middle of the paragraph. Oh, I see, I see, excuse me, yes, yes, Your Honor. That hospital report is a reference to the thing that appears next in the appendix, I think, which is at 87 through, what is it, 80 to 90, 91, right? 87, that's correct, Your Honor. 87 is the hospitalization at Danville, and the next two pages are the special psychiatric examination report. So this is the document, the 87 through 91 is the document referenced at page 85 of the joint appendix, correct? No, those are two separate documents. Well, I understand, but the first document, the document at 85, references a hospital report of 726 to 85, which is, as all appears, the document at 87 through 91. Right. Which contains the reference to post-traumatic stress syndrome. That's correct. And what the rating decision reported was is that it only referred to the complaint of depression, and at page 87 there is a complaint of depression. However, the diagnosis made is of post-traumatic stress disorder. I'm sorry. And there is, I believe, a reference to this diagnosis being agreed upon by another doctor, Dr. Hogset, that is in the second paragraph, the last sentence. So it appears from the actual content of the record that what was before the adjudicator was, in fact, two VA doctors who had diagnosed him with post-traumatic stress disorder. And what is even more troubling about this circumstance is the fact that the VA's examiner made note of the need to see this in order to confirm his opinion. He specifically indicated to the adjudicator that he recommended that these records be obtained and sent along with the claims file for his review, but the medical records were either not obtained, and it appears that at least that record was obtained, but that it was not sent back for the VA examiner's review. And it seems to me that what we're dealing with here is an incomplete examination that says that the patient reported to me that he had been treated for post-traumatic stress disorder by the VA, and if he did, I need to see those records in order to make my final opinion. Based upon my examination of the veteran alone, just in that limited time that the doctor had with him, he felt he didn't meet the full criteria. But we have two VA doctors. The known facts were that they were. If you read this decision literally, then those facts somehow were not before the adjudicator, because the adjudicator said that he didn't meet the criteria for post-traumatic stress disorder, but based exclusively upon the VA examination. What we're dealing with here is a combat veteran who only lacked the confirmed diagnosis of post-traumatic stress disorder to get his benefits in 1983 instead of in 1998. And the fact is that this was a clear and unmistakable error, because these records were there, and these records would have resulted in a manifestly different outcome had either they been properly addressed or acknowledged, or I believe in the language of Russell, the correct facts as they were known at the time were not before the adjudicator. Now the correct facts as known were that two different VA doctors had diagnosed him with post-traumatic stress disorder. That would have met the criteria for entitlement to compensation for post-traumatic stress disorder, and even if you presumed that the VA doctor would not have changed his opinion, you would have had two VA doctors saying he had post-traumatic stress disorder and one VA examiner saying he didn't. Under the benefit of the doubt rule, that clearly puts the evidence in equipoise. If not, in fact, there is a preponderance of evidence in favor of the entitlement to compensation. Let me make sure I understand. What exactly do you think was not before the examiner in 1983? Before the examiner or before the adjudicator? The adjudicator. Okay. Before the adjudicator was this record that gave a diagnosis and acknowledged that there was... The 82 record. ...depression, and there is no reference whatsoever to the fact that that hospital report, and of course the difficulty is we're assuming that that is... The report itself was apparently available to the, or was reviewed by the adjudicator, right? That's what this seems to indicate. Right. But we also are making the assumption that the document that we're referring to is the next document in sequence. Right. Well, I think I thought we just agreed that that was what this reference was. Well, I'd say most likely it is, Your Honor, except that how can that be if the only thing that's reported by the adjudicator is to completely disregard the diagnosis made in that hospital report and the reference that Dr. Hoxett agreed with the diagnosis of post-traumatic stress disorder? Well, it sounds to me like you're not arguing so much that the document was not before the adjudicator, but rather that the adjudicator didn't give sufficient weight or disregarded some element that was present in the document. Is that...? No. What the criteria says in Russell is the correct facts. The correct facts were he was diagnosed twice by two different VA doctors with post-traumatic stress disorder. That is the correct facts. The facts as reported in the decision indicated that the document only showed a complaint of depression. Well, that was the only thing that the adjudicator referred to. That's right. But again, just to make sure we're on the same page here, your argument seemed to be at some point that the adjudicator could not have had that document before him. That's not really... that doesn't appear to be the case, right? Well, it's not only that document... Maybe the adjudicator skipped over some segment of the document, but the document itself appears from all evidence to have been before the adjudicator, right? But the VA examiner referred to three different sources of medical records. This examination only refers to one of the three. There was a private hospital treatment, and there was outpatient treatment at Peoria, Illinois. And there is no reference to either the private medical treatment or the outpatient treatment at Peoria for post-traumatic stress disorder. Now, it just seems to me that it defies comprehension to suggest that the VA correctly decided this case in 1983 when there was clear evidence that contradicts the adjudicator's conclusion, which is based exclusively on the fact that a diagnosis was not shown on the VA examination. But the Russell question isn't whether they correctly decided the case, is it? No, it's not. It's whether the correct facts as known at the time. And so the pivotal examination needs to be, what were the correct facts known at the time? And you read the entirety of at least that single document. We know that there were two diagnoses of PTSD, which thereby contradicts the conclusion that he didn't meet the criteria for post-traumatic stress disorder. And the basis for denial was that post-traumatic stress disorder was not shown on the VA's examination. But the VA's examiner said, whoa, time out. I need to have all of the information in order to make a competent opinion. Why shouldn't we read this record to say that the adjudicator decided to rely on the examiner's opinion rather than the opinion from the other doctors of the endoscope? Because that makes a mockery out of the VA examination. You send a veteran to an examiner for an opinion, and the examiner tells the adjudicator, I'm told that he has three other sources of medical records. Give them to me so that I can complete my examination thoroughly and competently. The veteran is entitled not to just an examination, but to a thorough and complete examination. So the error, the alleged error, was the failure to provide the examiner with the additional records. Well, I believe that's the second error. I believe the first error is the first prong of Russell, where the correct facts known at the time could not possibly have been before the adjudicator, either because he misread them or misunderstood the content of the record. I mean, it would seem to me that all he did was to go through and find one spot and reference a complaint, and ignored the diagnosis and ignored the reference to the second doctor having diagnosed him with post-traumatic stress disorder. So on the jurisdictional question, your position is that these facts or this situation would not have been appealable or reviewable before the statutory change, but now they're before us. Yes. At the time in 1983 when this decision was made, there was no judicial review, so he had no relief from this decision, although I suppose theoretically he could have applied it to the board. Well, there was no review. The Veterans Court didn't exist. It did not exist until 1988. But in terms of the statute, when the Veterans Court was formed, as opposed to whatever changes might have been made to, in theory, plug whatever gaps were appearing in the review to this court, these facts or this situation would have been on one side of that situation before and now on the other? Yes. Well, let's hear from the other side. We'll save you some rebuttal time, Mr. Carpenter. Mr. Gordon. Good morning, Your Honor. May it please the Court? Mr. Wilsilie explicitly asked this court to apply facts to law. The nature of his appeal is that the correct facts were not before the agency in 1983. It's an inherently factual investigation. It's remedial in one of two ways. Number one, it implicates the agency's duty to assist the veteran. This court held in Cook v. Principi that such a claim could not be. The second sort of complaint it could be is that the agency incorrectly weighed the evidence. I think we all agree that also does not state a proper jurisdictional basis. Whether our thesis is correct, and that is that this court has jurisdiction, depends on two things. Number one, the nature of the argument presented by Mr. Wilsilie. Number two, what the court actually did. By our count, Mr. Wilsilie explicitly asks or applies in at least 15 places in his brief that this court apply the facts to the law. A slightly less dramatic example in his reply brief where he explicitly states that this court has the authority. So, for example, on page 9 he says, These correct facts were not before the adjudicator because the adjudicator ignored the examiner's detailed report. He also asks us to apply the rule of Russell, doesn't he? Right. And if the board and the Court of Veterans' Appeals had refused to apply the rule of Russell, wouldn't that be a legal question that we could review? So he's at least stated a question within our jurisdiction. Well, again, this court often, in all sorts of decisions, will look at the nature of a complaint or an appeal and not just state it. So certainly Mr. Wilsilie devotes lots of time asserting that this falls under the so-called rule of law jurisdiction of this court. But for that to be true, in fact, in other words, for lawyers to look at it and say this is a rule of law case, you would have to have a rule of law evinced in the decision below. This court's jurisdiction requires that there be a decision on a rule of law. There is no decision on a rule of law except to correctly quote the rule of law. The rule of Russell, now appropriate in regulations, was correctly stated. Why wouldn't his argument be that the Veterans' Appeals Court failed to apply the appropriate rule of law, that what he wanted them to do was apply the rule of Russell and they failed to do so? Now why isn't that a legal question that he has appropriately put before us? In fact, it is. But as I've said, this court has often ruled that the court will look at the true nature of the matter, not simply what somebody calls it. So, for example, in takings claims before this case or contract claims, the plaintiff can state this is a takings claim, but if he goes on to describe his rights arising out of contract, then this court can say this isn't a takings claim, it's a contract claim. Here, and Mr. Wilsilie does not dispute this, the rule of Russell was explicitly cited by the court and then applied by the court. So he can say that, but is that all that's required? If a plaintiff can simply, or an appellant, can come before this court and say, this is a certain type of a claim, anybody with assault can state a claim in terms of actually putting the words on paper. But a jujitsu can't be the basis for this court's actual exercise of jurisdiction. The court also says we don't conflate the merits argument with the jurisdictional argument, doesn't it? Right, but there still has to be a dispute of the law. There must be a decision on a rule of law, and there is no decision on a rule of law unless you were to equate the statement by the court of the correct standard, the same standard Mr. Wilsilie urges, as a decision on a rule of law. Let's suppose, and some of the points that Mr. Carpenter was making during his argument seemed to me to at least be suggesting a kind of codicil to Russell, along the lines that not only does Russell require that the facts be known at the time before the adjudicator, but that the adjudicator must have adverted to at least very significant facts. That's, I think, what I took at least from some of Mr. Carpenter's comments regarding the problem with the 1982 report as related in the 1983 decision. If that's right, if that's an element of his claim, isn't that arguing for a rule of law regarding not so much the application of Russell, but the rule of Russell that we should adopt, whether or not it's correct? You have taken his claim as invention of a rule, now here on appeal, to say, well, adjudicators must completely state all of the lines of the document they refer to. And maybe we have a rule of law that would create a nonsense world. In the file you will find this document. I understand, and in the document you will find the references to the earlier diagnoses. But what I take him to be saying is that those were so significant to the ultimate decision that, well, in part what I think he's saying is they are so significant, those diagnoses in the 1982 hospital report are so significant that they cannot have been adverted to or perceived by the adjudicator, and if not perceived, they might as well not have been before the adjudicator, and therefore Russell wasn't satisfied, or at least the spirit of Russell wasn't satisfied. If that's the rule of law that we're talking about, don't we have jurisdiction at least to address that question? You still have to have a decision by the Court of Veterans' Appeals, the Court of Veterans' Claims, on a rule of law. A decision implies that there are competing views. Why don't you... You have to have whatever it takes to assure us as the appellate body that the law was correctly perceived and applied, even if we are not authorized to review the application to be sufficiently confident that it was perceived correctly and applied without reviewing the details. Doesn't that of itself take us over this jurisdictional hurdle? Well, certainly courts are required. Now we're going to review the Court of Veterans' Claims. It is required to state its reasons. I suppose if they just forwarded a decision to you and gave you a reason, you'd be applying perhaps to send it back and say, how did you get your answer in this case? But here the Court set out explicitly the very test that Mr. Willesee argued. So there is no decision to be made because there is no conflict, because there is really no issue. Unless that test is, in our view, incorrect. That is, I'm trying to figure out where you would draw the line. Let us say that it's conspicuously incorrect. That would not be beyond our jurisdiction, would it? Well, I'm not sure we're talking about the same thing. But if the Court of Appeals for Veterans' Claims had conspicuously, I suppose failed to mention, and revealed in this decision that it necessarily relied or made a decision on a rule of law that then resulted in the decision being favorable to the veteran, then you might infer either from the absence of the reference to the law itself, if you want to imply that the court somehow doesn't know the law, or the simple failure to apply it, you might infer this court below applied the wrong law, refused to apply Russell. But here our starting ground is the decision of the court itself reporting what it did. It stated the law exactly as Mr. Willesee asks that it be stated and went on to apply it. Now, what Judge Bryson and I were talking about was the decision, now we're two levels below and we're 25 years in the past, the decision by the adjudicator, and Judge Bryson's question was, well, what if the adjudicator did not, to the veteran's satisfaction, adequately state all of the factors that he should have considered? What then? Well, there is no law. But if the rule is then that such a decision could be applied to the board, the board, of course, has to state its reasons and basis. And the Court of Appeals for Veterans' Claims often returns decisions for the board back asking the court to provide a basis for review. That is, to state adequate reasons and basis. That's a board requirement. But there's no requirement that we're aware of with respect to the adjudicator. Ultimately, the question is, to the Court of Appeals for Veterans' Claims, which this court is now reviewing, was the decision of the board confirming the failure to find Q by the regional office, was that arbitrary and capricious? Or did it fail for failure to state adequate reasons and basis? The reasons and basis are before you. The court decided those were adequate reasons and basis. The court found no failure, nothing arbitrary and capricious about the rejection of the Q claim. Remember, we're now far removed from the original service connection claim. We are now with a claim that has unique elements, the Russell elements, if you will. And those are claims like every other claim. There's law, and it's Russell. We all agree. I mean that Russell properly stated those, and they've since been incorporated into regulation. We've agreed that what the facts are, really. We know it was before the examiner. And now what the examiner has to do and what the board has to do is apply facts to law. It's a claim like any other claim. Now it's up to the Court of Appeals to say, was there a rejection of that claim, which involves the law and application of facts to law, findings concerning what the correct facts were. That's an investigative fact-finding sort of a function. Was that arbitrary and capricious? Was it not supported by reasons and basis? The court said no. Now coming here, we have to go to yet another prism, another hole. Look, yet farther removed from the adjudicator 25 years ago was simply looking for service connection. Now we're saying, was there a decision of law made by the Court of Veterans Claims? Our thesis is that you won't know that unless you read the decision. And when you read the decision, you know instinctively there is no decision of law because there's no dispute among the parties what the rule of law is. And absent that judicial hook, any veteran can walk into this claim, this court at any time, and simply write down that, you know, my case is there's a rule of law here. Inevitably, I suppose the rules of law are statutes behind everything. The court's below due. And if the mere statement of that would then deprive this court of the opportunity to look behind that and apply its legal training to determine what is the true nature of this claim, every veteran's in. But every veteran can get in, I suppose, simply by stating a rule of law that may not be established but that the veteran wishes that this court to adopt, right? I mean, one could walk in and say any veteran who has an injury is entitled to recover. Now, that's a rule of law. And that would give us jurisdiction, I suppose, even though presumably we would say, well, the statutes don't provide for us to adopt that rule of law. Therefore, you lose. But you lose on the merits, not on jurisdiction, right? This is a case about jurisdiction. You can't just pass over jurisdiction all the time because the magic words have been said. This is the classic case. There is no dispute. The nature of the statute that affords this court jurisdiction, there is no, quote, decision on a rule of law. There is only a statement of the law and then where it goes from there afterwards. Again, the nature of this case is an allegation. This is clear from the reply brief that there was a failure to take into account correct facts. That necessarily involves an investigation. Those are inherently factual questions. Let me ask, since we've moved to a factual question, or at least one that has substantial factual components, let me make sure that we all agree as to what the facts are, whether or not this court has authority to deal with those. Could I just interpose one question on jurisdiction? Sure, please. Because as I understand your argument, this court would never review the issue of the correct application of Russell because the correct application of Russell will always involve step one, whether the correct facts were actually before the adjudicator. And thus, you would argue that no such claim could be within this court's jurisdiction. There's two ways to make an acute claim. One is to argue that the correct facts were not before the board, and the difference would have manifestly changed the outcome. The outcome determined it. Another way to say it is that there is a manifestly incorrect application of a regulation or statute at the time. Those open the opportunity for the regional office or the board to reexamine their cases. But the review of those decisions are always subject to the standard review of the Court of Appeals for Veterans Claims and ultimately the standard review on this court. So the regulations are made clear. There are two types of claims that could be made. Here it's a claim to correct facts were not before the court. It's that kind of acute claim. And that kind of acute claim is inherently factual in nature, implicating either the duty to insist, which is never legally cannot be the basis for acute claim, or the weighing of the evidence, which is what we have here. On this point, just to round up, the government's position is that no matter how conspicuously we might think that there have been some flaws, neither can those facts be reviewed, nor can this court review them to the stage of remanding for further review by whatever the appropriate tribunal might be, whether it's the Veterans Court or the board. I'm assuming by your question you're not talking about cases involving constitutional questions. Yes, we're not talking about constitutional questions. I think in order to remand you have to have jurisdiction first. All begins with jurisdiction. So in this precise case, if it were absolutely clear that the hospital report with those two doctors saying there was PTSD, if it was absolutely clear that that report was not before the adjudicator and had not been sent to the evaluator, there would be nothing that this court could do to remedy such a claim. Well, this court always has to have its jurisdictional hook, as I've called it. And that requires you to evaluate the CABC opinion and determine it decided a rule of law. In my hypothetical, CABC refuses to apply Russell to the case, as I have just stated. We don't have jurisdiction. Now you have an interpretation of the regulation. They determined that Russell would now have regulation. It did not apply, but they rejected an argument concerning the correct law to be applied. If you could perceive that from the case that's come to you, then you would say that here we have a case involving interpretation of law. So jurisdiction will always depend on the facts? It depends on the nature of the appeal argued and what was done by the Court of Veterans Claims. It always refers to what the Court of Veterans Claims did. Unless it's legal in nature, rejecting a legal argument that would change the outcome. But, of course, what the Court of Appeals for Veterans Claims did is subject to a lot of characterization. This is the problem we've been struggling with in these veterans cases since Ward 1. And that is, if I say that you've misapplied Russell, then I lose. If I say you have modified Russell, and the way I can demonstrate that you've modified it is that you've applied it to me in a way that Russell itself should not have been applied if you were faithful to the rule of law establishing Russell. Then I have jurisdiction here. And yet it's the same thing. I don't see the difference between those two, honestly. And it's not something that I... I mean, it's a problem with the way the statute is written, I'm afraid. But I really think it comes down to a question of characterization in many instances. I'm not sure there's a law drafter alive who can solve that problem. It's true that there are boundaries between the natures of cases, law of fact, application of law of fact. And certainly in the case where... But there's a lot of middle ground where it's... whether something is a modification of a legal rule or the application of a legal rule to a set of facts is a matter of characterization. Wouldn't you agree? Yes, of course. One of the things I do in my spare time is on fire. And there's lots of gray area, I will tell you, between a ball on a strike and in soccer and basketball between a charge and the opposite of the charges. And someone has to decide, and you look at the facts of the case. What we say in this case, and I think we're correct, is that when you look at this decision, you can see that the nature of this decision does not involve a decision on a rule of law, and you've just got to call it like you see it. Well, now, just again to go to the facts, and this is for sure a fact, but I just want to make sure that at least the factual predicate for all of this is agreed upon. But it does appear, and this is part of Mr. Carpenter's argument, it does appear from 91 of the joint appendix that the physician who wrote the 1983 report is saying, it would be useful to me to have the 82 records. Presumably the physician, at least, did not have the 82 records and said, please send them to me. And I take it, is it agreed? Well, I'll ask the question. Is it agreed that he never got them? We don't know. We don't know. But in any event, there was no amendment or supplementation to his examination report, I take it? That is correct. It appears nothing in the record explicitly say. I picked up the phone and talked to Dr. Miller, and I told him all there really was was a report from approximately a year earlier, signed by an M.D. I don't know if it's a psychiatrist or not. It's not clear whether that doctor made the diagnosis. He does refer to another doctor to whom Mr. Goolsey was referred for the appropriateness of referral to a veterans group, and said Dr. Hoggs agrees on the diagnosis of PTSD. Now, whether the examiner here, sorry, the adjudicator, took that as a sort of drive-by diagnosis, we don't know. Certainly the Veterans Administration later in supplementing the statement in the cases said what the adjudicator had before him was a detailed, this is about a four-page report by a psychiatrist, very close in time, June of 83 to September of 1983, adjudication. And as opposed to that, there was a one-page form signed by an M.D., not necessarily a psychiatrist, we don't know, another M.D. is referred to, don't know if he's a psychiatrist, no basis was given, no explanation was given. Apparently the nature of this disease is it changes over time. Certainly the assignment, for example, in 1996 I think he was examined and found not to have traits of PTSD, but not PTSD. So apparently this can sort of come and go, but at the time of the adjudication clearly that was not there, and apparently the adjudicator felt this earlier diagnosis was at least too remote a time, certainly not as credible and to be given as much weight as it had been given to Dr. Miller and the psychiatrist's examination. Do you have time for one more question? Would you just give me the one best case that you would rely on on this jurisdictional question? Well, we rely on the law, and you cited a, this Court has said over and over again that this Court cannot apply facts to law, and we rely on all those. Our brief refers to a case we threw in an example site, I think, Flores v. Nicholson was the case. It's on page 10 of our brief. We have a little memo that enunciates this principle in a statement in the statute. Thank you. Any more questions? Okay. Thank you, Mr. Gillian. Mr. Carpenter, we'll rebuttal time. Court, please. It's very troubling that the Court below creates a rule of law, tells the veteran that if you do these things, then you get relief. You get the revision of a prior final decision based originally on a VA regulation, ultimately on a statute that codifies the VA's regulation. Nowhere in the VA's regulations concerning appeals of rating decisions is Russell codified. That's simply an incorrect statement. What was codified was the regulation 3.105A, which was made into a statute. But what happens, and what happened in this case was, is that Mr. Wilsey, after judicial review, after he got his benefits, went in and said, but I asked for this benefit in 1983, and the VA had already told me I had PTSD. So he files a request for revision. The VA denies it. It goes to the board. The board denies it. He files an opening brief, which is in the joint appendix, which relies on the test set out in Russell. The concluding paragraph of Judge Mormon's decision below, which is at page 4 of the joint appendix, says, based on the board's analysis, the Court holds that the board's determination that Q did not exist in the 1983 decision is not arbitrary, capricious, etc. That's what's at issue here. Was that legal determination correct? Was Russell correctly applied first by the board and then by the Veterans Court when the Veterans Court affirmed that determination? The fact is that the only way for Mr. Wilsey to get before this court is after Congress's amendment to allow for this court to look at a rule of law in the context of the application of that law to the facts as existed in the record. That's what Congress intended to do. That's what Judge Plager said was the interpretation of the panel decision in Morgan about what that amendment made. The citation to Flores is not appropriate. Flores does not apply to this case. Flores is a case in which it was seeking a factual determination. This court has the facts that were before the adjudicator at the time. This court has the facts that were before the board, which are the same, and they were the same facts that were before the Veterans Court. The question of law presented in this appeal is, does Mr. Wilsey have the right to come to this court and implicate its jurisdiction to review the application of that rule of law? And I plead guilty that I did ask 15 times in the brief to have this court review an application of law because it is that rule of law that this court now has jurisdiction to review to determine whether it was or was not correctly applied. Now, you certainly don't have to agree with me, but I do believe that you have jurisdiction under the amendment to 7292 and under this court's decision in Morgan. Now, assume we have jurisdiction and assume that we are persuaded that the correct facts were not before the adjudicator. Is it still undebatable what the results should be here? Because aren't there at least a question, as your opposing counsel has argued, that there was an MD record, or at least you can interpret the record as an MD record as opposed to a psychiatrist record, and the adjudicator chose to rely on the psychiatric record. Can't you at least... No, Your Honor. Why not? Because the record that they're relying on is a discharge summary from a period of hospitalization at a VA medical center. VA doctors admitted Mr. Wilsey. They treated him for post-traumatic stress disorder. Two different VA doctors diagnosed him with post-traumatic stress disorder. Essentially what they're doing is they're nullifying their own medical side of the equation, saying, well, our VA examiner's opinion, which really asked to have this information but never got it, was of more value. It is undebatable that he suffered from post-traumatic stress disorder in 1982, and he had a disability that resulted from his combat service in Vietnam. The VA ultimately decided that that was the correct decision. In reality, all we're talking about is moving the effective date back from 1998 to 1983. It's certainly undebatable that he suffered. Whether it's undebatable as to what his diagnosis was seems to me to be a different question. With respect, Your Honor, we're talking about not a private medical record but a VA medical record, and that every reasonable doubt is supposed to be resolved in the veteran's favor. And when you're resolving doubt between an inadequate VA examination and two doctors that saw him on an inpatient basis at a VA facility, that to me, quite candidly, must be considered undebatable. Thank you very much. Thank you, Mr. Carpenter and Mr. Gilliam. The case is taken under submission.